IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 22, 2015

## MARK ALLEN HILL v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Grainger County
No. 5326    Richard R. Vance, Judge**

**No. E2014-01011-CCA-R3-PC – Filed March 30, 2015**

The Petitioner, Mark Allen Hill, appeals the denial of his petition for post-conviction relief, wherein he challenged his "open" guilty plea to second degree murder. See Tenn. Code Ann. § 39-13-210. On appeal, the Petitioner contends that he received the ineffective assistance of counsel, leading to an involuntary plea, because trial counsel failed to inform him of the factors involved in enhancing his sentencing term. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Pepper C. Bowser, Rutledge, Tennessee, for the appellant, Mark Allen Hill.

Herbert H. Slatery, III, Attorney General and Reporter; John H. Bledsoe, Senior Counsel; James B. ("Jimmy") Dunn, District Attorney General; and George C. Ioannides, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
FACTUAL BACKGROUND

The Petitioner was originally charged with first degree murder and initiating the manufacture of methamphetamine. On November 28, 2011, the Petitioner entered an "open" guilty plea to the lesser-included offense of second degree murder, and the methamphetamine manufacturing charge was dismissed.

At the plea submission hearing, the trial court first reviewed with the Petitioner the various rights he was waiving by pleading guilty. The Petitioner then stated that no one had promised him anything in exchange for his plea, that he was satisfied with trial counsel's representation, that he was not under the influence of any intoxicant, and that he was pleading guilty freely and voluntarily. The Petitioner's prior criminal history was also discussed, including several felony convictions for habitual motor vehicle offender violations, and he was informed how convictions, both past and present, can be used to enhance subsequent sentences.

The State provided the following factual basis for the Petitioner's plea:

[D]uring the early morning hours of June 15, 2010, [the Petitioner] encountered Adam Kelley [("the victim")] at the home of Courtney Couch, . . . here in Grainger County in a portion of Bean Station . . . . When he encountered [the victim], the [Petitioner] took a knife and stabbed him twice in the ribs, once in the shoulder, and cut him on the left finger and left arm and a slight cut on the throat as well . . . . The [Petitioner], after inflicting those wounds, fled the scene, [and] left on foot . . . .

[The victim] went inside the residence where 911 was called. [The victim] was heard giving a dying declaration on the 911 recording system saying that [the Petitioner] had stabbed him. LifeStar was called. He was transported to UT hospital. He later died on the operating room table, . . . approximately six hours after the stabbing, five to six hours after the stabbing.

Dr. Mileusnic conducted an autopsy. She would testify that two of the wounds to the ribs were fatal. One of those penetrated the heart causing a blood loss and loss of blood pressure resulting in his death . . . .

The investigators conducted the investigation. Agent Cephas, along with Detective Jarnigan, Detective Seals, [and] Sheriff Harville, interviewed the [Petitioner], . . . and he made statements that he did in fact stab him. He said it was in response to an attack by [the victim]. He said [the victim] came at him with a bag and a jar and swung at him first. That's what his statement said. When he was notified of the charges he made statements─that statement to the officer was after a Miranda warning was issued . . . . He made some voluntary utterances to Colby Nicely and Ed York, who were booking officers, stating that, ["]I meant to kill him after he swung on me.["]

The trial court then asked the Petitioner, "If [he] had gone to trial [was] that what [he] would have expected the State's witnesses to say that [he] did?" The Petitioner replied that he "really [didn't] know what they would say." Trial counsel interjected, "[To the Petitioner],

we've gone over the─I've provided you with discovery in this case and you've gone over it extensively and we've gone over it together. We've discussed the evidence against you, correct?" Trial counsel continued, "What the [State] has just said, would you agree that that is what the evidence that's in that discovery that the State has against you, is that what was presented to you and what you looked over and is that what it said?" The Petitioner responded affirmatively to both questions. The trial court then "approve[d] the agreement."

A sentencing hearing was held. The Petitioner requested leniency, despite his criminal history, arguing that he lacked a violent record, and that "the root of his problems [was] generally drug and alcohol related" and then stating his desire for treatment. Following testimony from the victim's mother and father, and from the Petitioner, the trial court imposed the maximum term for a Range I, Class A felony─twenty-five years at 100%. See Tenn. Code Ann. § 40-35-112(a)(1). The trial court determined that the following enhancement factors applied to the Petitioner: (1) the Petitioner had a previous history of criminal convictions and criminal behavior, noting that the proof established an extensive history of prior felony convictions ("six or seven, depending on how you count them") and drug usage spanning most of the Petitioner's life; (9) the Petitioner possessed or employed a deadly weapon during the commission of the offense, to wit, a knife; and (13) the Petitioner was on probation for a misdemeanor offense at the time this offense occurred. See Tenn. Code Ann. § 40-35-114. The Petitioner did not file any direct appeal challenging his sentence.

On November 5, 2012, the Petitioner filed a timely pro se petition for post-conviction relief, asserting that his plea was entered unknowingly and involuntarily due to the ineffective assistance of trial counsel. Counsel was appointed, but no amended petition was filed. Although the Petitioner raised multiple allegations for relief, many of those were rambling and incoherent to a large degree and were abandoned at the evidentiary hearing. On appeal, the Petitioner's brief is limited to a single allegation: that trial counsel failed to review "the enhancement factors regarding sentencing and the punishment range of the offense," and that had trial counsel done so, "he would not have taken the open plea[.]"[1]

At the subsequent post-conviction hearing, both the Petitioner and trial counsel testified. The post-conviction court thereafter denied relief, reasoning,

---

[1] Because the Petitioner has abandoned all other claims on appeal, we will limit our recount to the facts relevant to the single issue of ineffective assistance presented.

[T]he court cannot find evidence, any evidence of [trial counsel's] deficient performance. He advised [the Petitioner] correctly as to the factors to be used of what the law was. He advised him correctly about the range of penalties. And so on the first prong, the [c]ourt does not find evidence of deficient performance, and since there was no deficient performance and the advice given and the investigation of the case, the [c]ourt certainly cannot find that his defense was prejudiced.

This timely appeal followed.

ANALYSIS

The burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea, like the present case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

-4-

The Petitioner's argument on appeal is based solely upon his testimony at the post-conviction hearing. He testified that, had he "known what the judge could have used to sentence [him] to the whole [twenty-five years]," he would not have entered an "open" plea to second degree murder but, instead, would have accepted the determinate offer of twenty years. According to the Petitioner, he was offered two determinate terms for second degree murder prior to his "open" plea—the first offer, eighteen years, and the second offer, twenty years. The Petitioner testified that trial counsel advised him not to take either of the deals because a better outcome was possible. He stated that he only had a "few minutes" to consider whether to take the twenty-year offer or enter an "open" plea. Trial counsel told him that the State did not have a case for first degree murder but that he "would definitely get the whole [twenty-five]" for second degree murder if he proceeded to trial. Furthermore, the Petitioner said that trial counsel told him he would "probably receive less than [twenty] years" if he entered the "open" plea to second degree murder. According to the Petitioner, trial counsel did not explain how the trial court could use "the elements of the severity of the crime and [his criminal] history and [his] . . . admitting to having a drug problem all [his] life" to enhance his sentencing term; trial counsel only explained that the sentencing range was fifteen to twenty-five years for second degree murder. The Petitioner confirmed that he was "clear headed" when he entered his plea.

However, the post-conviction court accredited the testimony of trial counsel over the Petitioner's testimony. Trial counsel testified that he met with the Petitioner on several occasions and reviewed discovery with him and that they were preparing a theory of self-defense for trial. The Petitioner faced a minimum sentence of fifty-one years if he was found guilty by a jury of first degree murder, and trial counsel denied ever telling the Petitioner that a conviction for first degree murder was not a possibility if he proceeded to trial, although trial counsel did not feel it "was the strongest case for a first degree[.]" The Petitioner also faced the manufacturing methamphetamine charge at a jury trial. According to trial counsel, he reviewed the charges and possible sentences with the Petitioner and what the trial court "would take into account" at sentencing, specifically going over the Petitioner's prior criminal history with him, as well as his lack of prior violent felonies and his history of drug use as possible mitigation evidence. Trial counsel said that they discussed the twenty-year offer and that he explained to the Petitioner the "aggravating" and "mitigating" factors to be considered if an open plea to second degree murder was entered. According to trial counsel, they "had long discussions about what an open plea was[,]"and the Petitioner desired to enter an open guilty plea after receiving this advice.

The post-conviction court rejected the Petitioner's contention that he had not been informed of the factors that could be used to enhance his sentencing term prior to entering his open plea, "especially . . . the primary one for criminal history and drug use." We find nothing in the record to preponderate against the finding. As previously noted, credibility

determinations are best made by the lower court, and we will not disturb such determinations on appeal. State v. Young, 196 S.W.3d 85, 107 (Tenn. 2006). Moreover, we note that the Petitioner's criminal history was discussed at the plea submission hearing and that the trial court reviewed with the Petitioner how convictions, both past and present, could be used to enhance a sentencing term. Accordingly, we conclude that the post-conviction court did not err by denying the petition for post-conviction relief.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE